Harold Brewer suffered a work-related back injury while an employee of Trans Mart, Inc. As a result of that incident, Brewer filed a complaint in the Lauderdale County Circuit Court, seeking workmen's compensation benefits. After an ore tenus proceeding, the trial court found Brewer to be permanently and totally disabled and awarded benefits accordingly.
On appeal, Trans Mart raises two issues. It first contends that the trial court erred in awarding permanent and total disability benefits to Brewer.[1] It also contends that the trial court abused its discretion in failing to consider the effect of the Americans with Disabilities Act, 42 U.S.C. § 12101-12213 (Supp. 1993), on the gainful employment and retraining of Brewer.
The standard of appellate review in workmen's compensation cases is a two-step process. This court must first look to see if there is any legal evidence to support the trial court's findings. If such evidence is found, then we must determine whether any reasonable view of that evidence supports the trial court's judgment. Ex parte Eastwood Foods, 575 So.2d 91
(Ala. 1991).
The following facts were elicited at the bench trial. On June 13, 1988, Brewer was cutting torque converters in the course of his employment with Trans Mart. Brewer testified that as he reached up to pull a converter from a pallet, he felt a burning sting, like an ice pick being thrust into his back. He took the converter to his machine and locked it into place for cutting. At that moment, Brewer passed out. He was taken to the E.M.C. Hospital, but he was released later that day. However, when the pain continued overnight, Brewer returned to the hospital and was admitted for several days.
While in E.M.C. Hospital, Brewer was treated by Dr. Roger Ray, a Florence neurosurgeon. Dr. Ray sent Brewer to Dr. Davies, a Birmingham neurosurgeon, but Brewer saw Dr. Davies only on a single occasion. Sometime later, Brewer also visited a Huntsville neurosurgeon for another opinion. Other than these instances, however, Brewer has been in the care of Dr. Lloyd Johnson, Jr., a Florence orthopedic surgeon.
Dr. Johnson began treating Brewer on January 19, 1989. When conservative measures were unsuccessful, Dr. Johnson performed a partial hemilaminectomy, with a foraminotomy and a fat graft in September 1989. That procedure involved the partial removal of the bone and disc around the nerve in the lower spine and the creation of a larger opening, through which the nerve root could pass. Following the surgery, Brewer's pain diminished, then reoccurred. The portion of the disc that was removed reformed, and scar tissue developed in Brewer's lower back, causing him continued pain.
Dr. Johnson determined that Brewer reached maximum medical improvement on February 11, 1992. In his deposition, Dr. Johnson stated that his prognosis for Brewer was "poor," and he noted that Brewer "appeared disabled on clinical examination." He gave Brewer an impairment rating of 25% for the body as a whole and listed the following restrictions: no lifting over 10 pounds, no repetitive bending, no overhead work, no sitting for more than 30 minutes at a time, and *Page 471 
no standing in one position for more than 15 minutes.
At trial, Brewer testified that although he is still seeing Dr. Johnson, his condition continues to worsen. He suffers pain on a daily basis and averages no more than three hours sleep per night. He can drive if he has to, but he is unable to perform ordinary household chores or to pursue his favorite activity, hunting. He stated that the depression he has suffered as a result of his injury has greatly affected his relationships with his wife and with his child.
The trial court had before it two vocational experts, neither of whom could locate "gainful employment" for Brewer. Brewer's vocational expert, Dr. James Crowder, found Brewer to be 100% vocationally disabled because of his pain, the restrictions enumerated by Dr. Johnson, and Brewer's injury itself. Trans Mart's vocational expert, Myrtice Carr, conceded that she does not believe that Brewer "could go out and get a job as he once did, doing the same things," but she believes that "there are some other fields out there, and some other type of 'creative' employment that he could sustain."
Trans Mart first argues that a finding of permanent disability is contrary to the facts presented to the trial court. It contends that because Brewer has attempted retraining activities and has no restrictions on walking or driving, he cannot be considered permanently disabled.
The test developed in Brunson Milling Co. v. Grimes, 267 Ala. 395, 103 So.2d 315 (1958), has been used for thirty-five years to help determine the extent of a worker's injury: "An employee who is so injured that he can perform no services other than those which are so limited in quality, dependability, or quantity that a reasonable stable market for them does not exist, may well be classified as totally disabled."267 Ala. at 400, 103 So.2d at 318. Thus, the test for total disability is the inability to perform one's trade, and if so unable, then the inability to obtain other reasonably gainful employment.Mead Paper Co. v. Brizendine, 575 So.2d 571
(Ala.Civ.App. 1990). The employee is not required to be absolutely helpless or suffer total physical disability. Price's Bar-B-Quev. Carter, 541 So.2d 38 (Ala.Civ.App. 1989).
We note, however, that "[g]ainful employment means employment similar in remuneration to that earned prior to the injury. Implicit in this is that the gainful employment sought to be restored must be 'suitable.' By 'suitable' we mean employment which is compatible with the employee's pre-injury occupation, age, education, and aptitude." Ex parte Beaver Valley Corp.,477 So.2d 408, 412 (Ala. 1985). Also, in making a determination as to the extent of disability, the trial court must consider all of the evidence, including its own observations, and it is not bound by the testimony of experts. Southern AluminumCastings Co. v. Whatley, 560 So.2d 1086 (Ala.Civ.App. 1990).
After a careful review of the record, we find that there is ample legal evidence to support the trial court's finding of permanent and total disability, and we hold that a reasonable view of that evidence supports the trial court's judgment.
Trans Mart also contends on appeal that the trial court abused its discretion by failing to consider the Americans with Disabilities Act (ADA) when determining Brewer's capacity for vocational retraining or gainful employment. The ADA was enacted by Congress in 1990 for the purpose of eliminating discrimination against individuals with disabilities. 42 U.S.C. § 12101(b).
Trans Mart requests this court to reverse and remand this case to the trial court with directions that the trial court consider the facts in light of the ADA. It is Trans Mart's contention that the trial court must consider the ADA in determining whether Brewer can or cannot be gainfully employed.[2]
Trans Mart does not cite any authority from any jurisdiction in the United States to support its position on this issue. In fact, there appears to be none, and neither this *Page 472 
court nor our supreme court has addressed the relationship of the ADA to the workmen's compensation laws of this state.
Trans Mart asserts that the trial courts of Alabama must now consider the effects of the ADA on employment practices in making a determination of an employee's disability. This, in effect, would limit the remedies presently available to injured employees under the workmen's (now worker's) compensation laws of this state. The ADA provides, instead, that "[n]othing in this chapter shall be construed to invalidate or limit the remedies, rights, and procedures of any . . . law of any State . . . that provides greater . . . protection for the rights of individuals with disabilities. . . ." 42 U.S.C. § 12201(b).
It is apparent that Congress did not intend for the ADA to limit the rights or remedies afforded disabled employees by Alabama's workmen's compensation laws. Consequently, we decline to hold that the trial courts of Alabama must consider the effects of the ADA on employment practices in making a determination of an employee's disability. Therefore, Trans Mart's assertion is without merit.
The judgment of the trial court is affirmed.
AFFIRMED.
THIGPEN and YATES, JJ., concur.
[1] In the statement of the issues included in its appellate briefs, Trans Mart advances an alternative question with regard to its first issue: "whether the trial court erred in determining the amount of total and permanent disability benefits awarded to the plaintiff under the Court's Final Judgment." Having raised the issue, however, Trans Mart offers no argument on it. We therefore disregard that portion of Trans Mart's first issue.
[2] Trans Mart argues that the trial court presumed that employers would ignore the ADA and intentionally discriminate against Brewer because of his disability. We cannot determine, however, that the trial court made such a presumption.