Carquest Auto Parts Tools of Montgomery, Alabama, Inc. ("Carquest"), appeals from a judgment entered by the Montgomery Circuit Court in favor of Stacy Waite in which the court found Waite to be 100 percent permanently and totally disabled and awarded her workers' compensation benefits commensurate with that finding. We affirm in part and reverse in part.
Waite sustained an on-the-job injury to her back on May 24, 2000, when she pulled two brake rotors weighing between 45 and 65 pounds each off a shelf from an overhead position. Dr. Donovan Kendrick performed surgery on Waite's back on August 20, 2000. Following the surgery, Waite *Page 424 
was evaluated by Russ Gurley, a vocational expert. Gurley assigned Waite a vocational-disability rating of 25 to 30 percent. Subsequently, Dr. Kendrick released Waite to return to light-duty work.
Waite did not return to work because she continued to be in severe pain; subsequently, she requested that Carquest provide to her a panel of four doctors from which to choose in order to receive further treatment. See § 25-5-77(a), Ala. Code 1975. Waite chose Dr. Timothy Holt, who, after ordering an MRI and reviewing its results, recommended that Waite have a back fusion in order to stabilize her back. Dr. Holt performed the fusion on October 5, 2001.
Following the back fusion, Waite engaged in some physical therapy but continued to be in pain. A functional capacities evaluation ("FCE") was performed on Waite on February 28, 2002. The FCE reflected a 100 percent validity criteria, meaning that Waite showed consistent and good effort for the test. The FCE indicated that Waite was capable of performing light-duty work. However, Waite testified at trial that she was bedridden for two days following the FCE because of the pain in her back. Dr. Holt declared that Waite had reached maximum medical improvement on March 7, 2002. Subsequent to this, Waite was scheduled to have a third surgery to "remove hardware" from her back.
On June 17, 2002, Waite was evaluated by Jo Helen Spradling, a vocational expert. Spradling testified at trial that in her opinion, at that time, Waite had a vocational-disability rating of 100 percent but that if Waite were able to recover from the third surgery she was due to have in the near future, and thereafter was able to engage in light-duty work, her vocational-disability rating would be 45 percent.
On August 29, 2000, Waite filed suit against Carquest for workers' compensation benefits stemming from her back injury. The case proceeded to trial on July 26, 2002, with the trial court taking testimony from Waite and Spradling, as well as receiving documents from the doctors and the vocational experts that had evaluated Waite. The parties stipulated at trial that the only issue was the extent of Waite's disability. The trial court concluded on September 25, 2002, that Waite had a 100 percent impairment rating. Carquest appealed and this court dismissed the appeal, concluding that the trial court's judgment was not final. The trial court issued a revised order on March 14, 2003, again concluding that Waite is 100 percent permanently and totally disabled. The trial court awarded Waite benefits of $153.34 per week for the remainder of her life expectancy, and it awarded a lump-sum attorney fee to Waite's counsel. Carquest appeals.
Carquest makes two arguments on appeal. First, it contends that the trial court's finding that Waite is 100 percent permanently and totally disabled is against the great weight of the evidence presented at trial. "Where evidence is presented to the trial court ore tenus, the court's findings of fact based on that evidence are presumed correct and those findings will not be disturbed on appeal unless they are clearly erroneous, without supporting evidence, manifestly unjust, or against the great weight of the evidence." Jasper City Council v. Woods,647 So.2d 723, 726 (Ala. 1994).
In support of this argument, Carquest draws attention to the following: (1) that all of Waite's doctors, and the FCE performed on Waite, indicated that she could perform light-duty work; (2) that the first vocational expert who evaluated Waite placed her vocational-disability rating at *Page 425 
between 25 and 30 percent; (3) the vocational-disability rating assigned to Waite by Spradling, as discussed below; and (4) that Waite performed what she described as "hard work" taking care of her five children at home. Carquest contends that all of this evidence weighs against the trial court's finding of a 100 percent total disability.
Spradling testified:
 "Basically at this time since she's undergone two surgical procedures, the most recent being a lumbar spinal fusion with posterior pedicle screw instrumentation that's, I guess, to require hardware removal in the upcoming near future, I believe in or about October of that year. But at the present time, she's unemployable.
 "If, however, she recuperates, and she's capable of returning to work at the light level, it's my opinion that she would encounter an approximate 45 percent vocational loss."
(Emphasis added.) Thus, Spradling testified that, if Waite's condition remained what it was at the time Spradling evaluated her, then Waite's vocational-disability rating would be 100 percent. The potential 45 percent rating was conditioned on Waite fully recovering from a third surgery. Moreover, in a bit of "self-fulfilling" reasoning, Spradling conditioned Waite's prospect for a 45 percent rating on Waite's being "capable of returning to work at the light level." Absent those conditions, Spradling gave Waite a 100 percent disability rating.
Further, the trial court is not required to rely only on the expert testimony.
 "It is well settled that the trial court has the duty to determine the extent of disability and is not bound by expert testimony in making that determination; yet, in making its determination, the trial court must consider all the evidence, including its own observations, and it must interpret the evidence to its own best judgment. Specifically, a trial court is not bound to accept a physician's assigned impairment rating and is free to make its own determination as to an employee's impairment."
Compass Bank v. Glidewell, 685 So.2d 739, 741 (Ala.Civ.App. 1996) (citation omitted).
Waite unequivocally testified that she did not believe she could work anymore because of the pain she experiences in her back. She also testified that she is not even able to do regular duties around her house. "I can't pick up my three-year-old. I can't bend and pick up clothes out of my dryer, and mop[ping] and sweep[ing] are hard; vacuuming is hard. I mean, my regular house duties [are] hard."
Moreover, the trial court also considered Waite's educational background, her past work history, and her complaints about pain in arriving at its conclusion. "In determining the extent of loss of ability to earn the trial court may properly consider the employee's education and vocational training." Tidwell Indus.,Inc. v. Kennedy, 410 So.2d 109, 110-11 (Ala.Civ.App. 1982). "In making its determination as to the extent of a worker's disability, the trial court can consider the worker's subjective complaints of pain." Dairyman's Supply Co. v. Teal,863 So.2d 1109, 1113 (Ala.Civ.App. 2003). "[T]he test for total disability is the inability to perform one's trade, and if so unable, then the inability to obtain other reasonably gainful employment. The employee is not required to be absolutely helpless or suffer total physical disability." Trans Mart, Inc. v. Brewer,630 So.2d 469, 471 (Ala.Civ.App. 1993) (citation omitted). "`[G]ainful employment means employment similar in remuneration to that earned prior to the *Page 426 
injury. Implicit in this is that the gainful employment sought to be restored must be "suitable." By "suitable" we mean employment which is compatible with the employee's pre-injury occupation, age, education, and aptitude.'" Trans Mart, Inc.,630 So.2d at 471 (quoting Ex parte Beaver Valley Corp., 477 So.2d 408, 412
(Ala. 1985)).
The trial court emphasized in its judgment the facts that Waite possesses an eighth-grade level of education, that she has no vocational training, and that her work history consists strictly of jobs involving medium to heavy labor. Waite is not completely helpless; however, her education and skill levels, her physical limitations, and the evidence regarding Waite's pain, led the trial court to conclude that Waite was totally disabled.
Because the trial court received evidence ore tenus, that court was in the best position to observe the demeanor, determine the credibility, and assign weight to the testimony of each witness.See Mayfield Trucking Co. v. Napier, 724 So.2d 22 (Ala.Civ.App. 1998). Further, "[t]he resolution of conflicting evidence is within the exclusive province of the trial court, and this court is forbidden to invade that province upon review."724 So.2d at 25. "This court is precluded from weighing the evidence presented before the trial court." Fryfogle v. Springhill Mem'l Hosp.,Inc., 742 So.2d 1255, 1258 (Ala.Civ.App. 1998), aff'd,742 So.2d 1258 (Ala. 1999). While we cannot say that we necessarily would have reached the same decision, when all of the facts mentioned above are considered, it must be concluded that the trial court's decision is not due to be reversed as being against the great weight of the evidence. We therefore affirm the trial court's judgment on this issue.
Carquest's second argument is that the trial court erred in awarding Waite's attorney a lump-sum attorney fee without reducing Waite's weekly benefits. The trial court awarded Waite's attorney a lump-sum attorney fee of 15 percent of the future and accrued benefits awarded to Waite, which equaled $20,152.62. However, Carquest contends that the trial court failed to reduce Waite's future weekly benefits to reflect the 15 percent lump-sum fee. As a result of this error, Carquest contends, instead of Waite receiving $153.34 per week in the future, she ought to receive $130.34 per week.
Waite concedes that the trial court erred in its calculation of the future weekly benefits and thus agrees that the trial court's judgment should be reversed on this issue to comport with the calculations presented by Carquest. Therefore, the trial court's judgment concerning the calculation of Waite's future benefits is reversed and the cause is remanded for the entry of a judgment adjusting Waite's benefits consistent with the calculations Carquest presented to this court, which will result in a future weekly benefit to Waite of $130.34.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED WITH INSTRUCTIONS.
YATES, P.J., and CRAWLEY, THOMPSON, and PITTMAN, JJ., concur.